UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERICK MEIR,

                      Petitioner,

              v.

M. ROYCE,

                      Respondent.
_____

                                                                REPORT
                                               and
                            RECOMMENDATION

                                          21-CV-329JLS(F)

**APPEARANCES:**         ERICK MEIR, *Pro se*
                              17-B-3086
                              Green Haven Correctional Facility
                              Box 4000
                              Stormville, New York  12582-0010

                              JOHN J. FLYNN
                              DISTRICT ATTORNEY, ERIE COUNTY
                              Attorney for Respondent
                              DANIEL JAMES PUNCH
                              Assistant District Attorney, of Counsel
                              25 Delaware Avenue
                              Buffalo, New York  14202

## JURISDICTION

Petitioner commenced this proceeding on March 1, 2021, requesting habeas relief pursuant to 28 U.S.C. § 2254.  On May 26, 2021, Honorable John L. Sinatra, Jr. referred the matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) for report and recommendation.

## BACKGROUND

Petitioner Erick Meir ("Petitioner" or "Meir"), proceeding *pro se*, filed a petition (Dkt. 1) ("Petition"), seeking habeas relief challenging his August 18, 2017 conviction by

jury in New York Supreme Court, Erie County, of predatory sexual assault against a child in violation of N.Y. Penal Law § 130.96, and predatory sexual assault in violation of N.Y. Penal Law § 130.95[3] ("the conviction").  Russell P. Buscaglia, then Acting New York Supreme Court Justice ("Justice Buscaglia"), presided over the jury trial at which Petitioner was represented by Robert M. Goldstein, Esq. ("Goldstein"), and appearing for the prosecution were Assistant Erie County District Attorneys Ryan D. Haggerty ("Haggerty"), and Anthony M. Rossi ("Rossi").  Because Petitioner had previously been convicted of a felony sexual assault of a six-year old child, at sentencing on October 11, 2017, Petitioner was sentenced on each count as a second child sexual assault felony offender to indeterminate sentences of 25 years to life, both sentences to run concurrently, and an order of protection barring Petitioner from any contact with the victim for 100 years was issued.  On December 20, 2019, Petitioner's conviction was affirmed by New York Supreme Court, Appellate Division, Fourth Department ("Appellate Division"), *People v. Meir*, 112 N.Y.S.3d 645 (4th Dept. 2019), and leave to appeal to the New York Court of Appeals was denied on April 27, 2020.  *People v. Meir*, 148 N.E.3d 471 (N.Y. 2020) (table).  Petitioner did not seek further appeal to the United States Supreme Court and the 90-days in which to do so has expired.  *Saunders v. Senkowski*, 587 F.3d 543, 547 (2d Cir. 2009) (holding when a petitioner does not seek *certiorari* in the United States Supreme Court, a state conviction becomes final ninety days after the New York Court of Appeals denies leave to appeal).

On March 1, 2021, Petitioner filed a petition seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 (Dkt. 1) ("Petition").  On May 25, 2021, Respondent filed an answer (Dkt. 3), and Memorandum of Law opposing the Petition (Dkt. 4)

("Respondent's Memorandum"), and also manually filed a volume containing the records from the state court trial and appeals ("State Court Record").[1]  On July 12, 2021, Petitioner moved for an extension of time to file a reply in further support of the Petition (Dkt. 6) ("Petitioner's Motion").  Although Petitioner's Motion was granted by Text Order entered July 13, 2021 (Dkt. 7), to date, Petitioner has not filed any reply.  In a letter to the Clerk of the Court dated June 13, 2022, Petitioner requested a status update (Dkt. 8).  Oral argument was deemed unnecessary.

Based on the following, the Petition should be DISMISSED.


## FACTS[2]

In January 2016, the City of Buffalo Police Department ("Buffalo Police"), commenced an investigation ("the investigation"), into an anonymous complaint filed on behalf of one D.M.,[3] a three-year old boy, alleging a sexual assault by Petitioner, Erick Meir ("Petitioner" or "Meir"), in a house located at 84 Armbruster Street in Buffalo, New York ("the house").  Trial Tr.[4] at 66, 225.  As relevant to this criminal action against Petitioner, the residents of the house included Petitioner, Petitioner's friend Robert Humbert ("Rob"), Rob's girlfriend Alexandra Grant ("Alex"), Alex's sister Allyson Grant ("Ally"), Ally's girlfriend Lauren McAndrew ("Lauren"), and the victim D.M.  Trial Tr. at 226-27, 229, 355.  Lauren was the mother of D.M. who referred to Ally as "Dada," and to Alex as "Titi" meaning "aunt" or "Lulu."  Trial Tr. at 134, 227-29, 239.

---

[1] The State Court Record does not include an index and the documents in the State Court Record are not Bates-stamped nor arranged in any particular manner.
[2] Taken from the Petition and State Court Record.
[3] The minor child is referred to only by his initials.
[4] References to "Trial Tr." are to the state trial transcript.

In January 2016, D.M. reported to Alex that Petitioner touched him in a sexual manner.[5]  Trial Tr. at 228-29.  Upon D.M.'s reported sexual abuse by Petitioner, Alex placed several telephone calls including to Rob, Ally, and the Buffalo Police who contacted Child Protective Services ("CPS").  *Id*. at 229-30, 232-33.  Rob and Ally proceeding directly to the house, arriving shortly after Alex's calls.  *Id*. at 233.  Rob texted Petitioner, who was visiting his parents, and asked him to come to the house, but Petitioner did not appear until the next day.  *Id*. at 233-34, 355-56.  When Petitioner arrived at the house the next day, he was confronted by Rob, Alex, Ally and D.M. about the sexually abusive behavior reported by D.M.  Trial Tr. at 234, 357-58.  Rob, Alex and Ally told Petitioner to pack up his belongings and leave the house.  *Id*. at 359.  Petitioner left and went to his parents' house after which Petitioner had no more contact with the other residents of the house.  *Id*. at 359-60.

In February 2016, Buffalo Police Detective Joseph Ahmed ("Det. Ahmed") was assigned to the investigation.  Trial Tr. at 65.  Some difficulties in determining the identity of D.M.'s guardian delayed the investigation,[6] but on September 12, 2016, D.M. was brought to the Child Advocacy Center ("CAC") for a multidisciplinary interview ("MDI") in which D.M. was interviewed in a forensic setting in the presence of a CPS worker, a representative from the District Attorney's Office, law enforcement, and the forensic interviewer.  Trial Tr. at 68-71, 107.  Det. Ahmed watched the interview

---

[5] Although the date on which D.M. reported the abuse to Alex is not in the record, the criminal Information/Complaint, a copy of which is included in the State Court Record, indicates the incidents of sexual abuse occurred "beginning in late December of 2015 or early January 2016 and continuing until approximately January 20, 2016," and that the complaint was made "Thursday, January 21, 2016. . . . " Information/Complaint.

[6] At the time of the sexual abuse of D.M. for which Petitioner was criminally prosecuted and convicted, D.M. was the subject of an open investigation by CPS, unrelated to Petitioner's abuse of D.M.  Trial Tr. at 230, 237.  At some point between December 2016 and the end of the summer of 2016, custody of D.M. was awarded to one Dawn Wentz, Lauren's aunt.  Trial Tr. at 231-32, 237-38.

remotely by video in an adjoining room.  Trial Tr. at 73.  Based on the interview, Det.

Ahmed suspected Petitioner sexually assaulted D.M.  Trial Tr. at 75-76.  Det. Ahmed

telephoned Petitioner and requested Petitioner appear for an interview.  Trial Tr. at 76-

77.

On October 27, 2016, Petitioner voluntarily presented to the Buffalo Police

Headquarters Sex Offense Squad to be interviewed by Det. Ahmed ("first interview")

who administered Petitioner the warning required by *Miranda v. Arizona,* 384 U.S. 436

(1966) ("*Miranda*") ("*Miranda* warning").  Trial Tr. at 77-82.  Petitioner initially denied any

abuse, admitting only that in December 2015, while living with friends at the house, he

helped his roommates by baby-sitting D.M. five days a week from mid-morning until

5:00 P.M.  Trial Tr. at 82-83, 109.  During this time, D.M. and Petitioner were mostly in

Petitioner's bedroom where they played video games and watched television.  Trial Tr.

at 83.  Petitioner denied any sexual contact with D.M.  Trial Tr. at 113.  After the first

interview concluded, Petitioner left.  Trial Tr. at 83.  Det. Ahmed later contacted

Petitioner for a follow-up interview, Trial Tr. at 83, 113-14, 366, and on November 22,

2016, Petitioner again voluntarily presented to the Buffalo Police Headquarters Sex

Offense Squad for a videotaped interview ("second interview").  Trial Tr. at 84-86.  Prior

to the second interview with Det. Ahmed, Petitioner was questioned on November 22,

2016 by Buffalo Police Officer Thomas Armitage ("Officer Armitage"), who first

administered the *Miranda* warning to Petitioner.  Trial Tr. at 366-67, 382.  Based on

statements Petitioner made to Officer Armitage, Det. Ahmed was made aware that

Petitioner was ready to confess to abusing D.M.[7]  Trial Tr. at 83, 113-14.

---

[7] No transcript of the statements Petitioner made to Armitage are in the State Court Record, nor did Armitage testify at the trial.  On May 15, 2017, Petitioner requested the trial court conduct a so-called

During the second interview, Petitioner made incriminating statements to Det. Ahmed, admitting that while babysitting D.M. between "late December 2015 or early January 2016 and late January 2016," Petitioner sexually assaulted D.M. by performing oral sex on him three times. Petitioner's Confession[8] at 1. Petitioner admitted he knew his sexually assaultive conduct toward D.M. was "scarring" D.M., but assumed D.M. would not tell anyone and that no one would ever ask D.M. if anyone touched him. *Id*. Petitioner stopped watching D.M. after D.M. told Alex that Petitioner forced his penis into D.M.'s mouth and confronted Petitioner about the allegation, which Petitioner denied. *Id*. One of Petitioner's roommate's friends told Petitioner he "should just pack [his] stuff and leave." *Id*. Petitioner further stated that in the first interview, he denied the abuse because he was afraid his roommates would kill him. *Id*. Petitioner also stated that although he was in counseling during a previous term of incarceration for sexually assaulting another child, he was not admitted to the counseling until a few weeks before he was released and "just never had time to actually get into the class." *Id*.

By the conclusion of the second interview, Det. Ahmed had determined he would arrest Petitioner and performed a cursory search of Petitioner before calling for a patrol vehicle to pick up Petitioner to transport Petitioner to Central Booking. Trial Tr. at 94-

---

*Huntley* hearing pursuant to *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965), to determine whether Petitioner's pre-arrest inculpatory statements to Armitage were voluntarily made. No transcript of any *Huntley* hearing is in the record, but on August 14, 2017, Justice Buscaglia denied the motion, and the denial was not challenged on appeal.

[8] References to "Petitioner's Confession" are to a statement made by Petitioner during the second interview, transcribed and printed during the second interview. Although the videotape of the second interview was played at the trial, *see* Trial Tr. at 88-93, the dialogue from the second interview is not in the record, but Petitioner's Confession made from the second interview, sworn to and signed by Petitioner, is included in the State Court Record.

95.  When the police officers with the patrol vehicle ("patrol officers")[9] arrived, Det.

Ahmed exited the interview room to complete some paperwork and when he returned,

Det. Ahmed observed Petitioner having a seizure in the interview room.  *Id*. at 95, 342.

One of the patrol officers called for an ambulance and the patrol officers and Det.

Ahmed waited until Petitioner finished the apparent seizure after which Petitioner was

responsive to Det. Ahmed's questions.  *Id*. at 95-96.

Testifying at trial were Det. Ahmed, Trial Tr. at 51-124, the victim, D.M., *id*. at

130-46, one James William Caravan, M.D. ("Dr. Caravan"), *id*. at 170-21, Alex, *id*. at

224-40, the prosecution's expert witness licensed clinical social worker Stefan

Perkowski ("LCSW Perkowski"), *id*. at 269-324, and Petitioner.  *Id*. at 333-404.  Dr.

Caravan testified that on October 6, 2016, he examined D.M. at the Child Advocacy

Center in connection with the investigation.  Trial Tr. at 177.  Although Dr. Caravan did

not detect any physical injuries to D.M. indicative of sexual abuse, Dr. Caravan testified

that the type of sexual abuse of which Petitioner was accused would not necessarily

result in any physical injury.  Trial Tr. at 189-91.  Dr. Caravan further testified that in

response to his questions, D.M. told him Petitioner used his mouth to do "bad stuff" to

him that D.M. did not like.  *Id*. at 184, 196.  LCSW Perkowski, over Petitioner's

objection, testified as an expert regarding Child Sexual Abuse Accommodation

Syndrome ("CSAAS").  Trial Tr. at 243, 269-324.

D.M., as an unsworn witness, testified that as of the trial, he was four years old,

and given his date of birth, would have been three years old when the sexual abuse

occurred.  *Id*. at 133-34.  D.M. further testified that Petitioner hurt him by putting his

---

[9] The patrol officers are not further identified.

mouth on D.M.'s penis. *Id*. at 135-36.  On direct examination, D.M. was asked if he saw Petitioner in the courtroom, and after looking around the courtroom and standing on his chair to obtain a better view of the courtroom Petitioner pointed to "someone" he "recognize[d]"[10] or who "look[ed] familiar . . . ." *Id*. at 136-37.  After the close of D.M.'s testimony, the jury was excused and Justice Buscaglia informed the attorneys that when the jury returned he intended to clarify for the record that D.M. had identified Petitioner as the Defendant by pointing to him. *Id*. at 147.  In particular, Justice Buscaglia stated that, "[a]t that time he was pointing in my view to [Petitioner].  [Petitioner] was in the far right corner of the courtroom at counsel table." *Id*. at 147.  Justice Buscaglia further advised the attorneys that he did not earlier note this observation for the record because he anticipated there would be clarification upon redirect examination, which did not occur. *Id*. at 147-48.  When the jury returned, Justice Buscaglia clarified for the record in the jury's presence that D.M. "stood up on the witness chair and he pointed at someone he recognized in the courtroom.  I want the record to reflect that [D.M.] pointed to [Petitioner] at that time." *Id*. at 148.  Both Alex, who also testified that D.M. told her about Petitioner's abuse, and Petitioner testified that Petitioner's appearance at trial was different than how Petitioner appeared when D.M. was sexually abused, including that Petitioner had longer hair and facial hair at that time, Trial Tr. at 226, 390, *i.e.*, in late January 2016.  During his trial testimony, Petitioner recanted the statement he made during the second interview, *i.e.*, Petitioner's Confession, in which Petitioner admitted to sexually abusing D.M., explaining that before providing the statement to Det. Ahmed, Officer Armitage spoke with him and raised his voice, yelling at Petitioner

---

[10] Unless otherwise indicated, bracketed material has been added.

that he knew Petitioner sexually assaulted D.M., which caused Petitioner to have flashbacks to being abused during his previous incarceration on a prior child sexual assault conviction.  Trial Tr. at 367-71, 389.  Petitioner also testified that he faked the seizure at the conclusion of the second interview to avoid being taken into custody, Trial Tr. at 389, and that he admitted to Officer Armitage that he masturbated to memories of performing oral sex on D.M.  *Id*. at 396.


**DISCUSSION**

**1.    Standard of Review**

Petitioner seeks habeas corpus relief on four grounds including (1) the testimony of the 4-year old victim[11] and Petitioner's coerced and later recanted confession failed to provide the necessary corroboration to sustain the conviction ("First Ground"); (2) the prosecution's expert witness's testimony about child sexual abuse accommodation syndrome was impermissibly introduced into evidence at trial ("Second Ground"); (3) Petitioner's sentence was excessively harsh ("Third Ground"); and (4) the trial court erroneously informed the jury that the victim had identified Petitioner as the perpetrator of the sexual abuse for which Petitioner was convicted ("Fourth Ground").  Respondent argues in opposition to habeas relief that Petitioner's First, Second, and Fourth Grounds are without merit, Respondent's Memorandum at 12-19, 21-24, and the Third Ground does not present a federal question cognizable for federal habeas review.  *Id*. at 20.

In reviewing habeas petitions, a federal court is not permitted to act as an appellate court to review matters within the jurisdiction of the state courts, or review

_____

[11] It is undisputed the victim was three years old at the time of the sexual assault for which Petitioner was convicted.

specific rulings and decisions of state trial and appellate courts not involving federal constitutional claims; rather, the court is to determine whether the proceedings in the state court, as challenged by a habeas petition, amount to a violation of the Petitioner's federal constitutional rights as declared by the Supreme Court.  28 U.S.C. § 2254(d)(1); *Coleman v. Thompson,* 501 U.S. 722, 730 (1991) ("When a federal district court reviews a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States'" (quoting 28 U.S.C. § 2254(a)), *reh'g denied,* 501 U.S. 1277 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012).  Accordingly, federal review of state court convictions is limited to errors of such federal constitutional magnitude they necessarily deny the criminal defendant the right to a fundamentally fair trial.  *Cupp v. Naughton,* 414 U.S. 141, 147 (1973).

Pursuant to § 2254, as amended by Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court must give substantial deference to a state court determination that has "adjudicated [the federal constitutional claim] on the merits."  28 U.S.C. § 2254(d); *Sellan v. Kuhlman,* 261 F.3d 303, 309–10 (2d Cir.2001).  The AEDPA requires that where a state court has adjudicated the merits of a petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (" § 2254(d)").

Under *Williams v. Taylor,* 529 U.S. 362, 364 (2000), a federal habeas court may grant relief if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Id.*  This AEDPA requirement for habeas relief applies to petitions filed on or after the statute's April 24, 1996 effective date, *see, e.g., Williams,* 529 U.S. at 402; *Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Smith v. McGinnis,* 208 F.3d 13, 15 (2d Cir.2000) (*per curiam* ), *cert. denied,* 531 U.S. 840 (2000), and thus applies to the Petition.  State court decisions involve unreasonable application of Supreme Court caselaw where such decisions "identif[y] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case."  *Id.*  A federal habeas court must therefore apply the § 2254(d) deferential review standard where the state court has "adjudicated [the federal claim] on the merits," 28 U.S.C. § 2254(d), and, in instances where claims have not been adjudicated on the merits, apply the pre-AEDPA *de novo* review standard, even where the petition was filed after the effective date of the statute. *Sellan,* 261 F.3d at 314; *Boyette v. Lefevre,* 246 F.3d 76, 89, 91 (2d Cir.2001).

Pursuant to 28 U.S.C. § 2254(e) (" § 2254(e)"), formerly 28 U.S.C. § 2254(d), the state court's determination as to evidentiary matters is presumed correct, unless the federal habeas court concludes that the relevant state court determination is not fairly supported by the record, *Sumner v. Mata,* 449 U.S. 539, 546–47 (1981), and it is the burden of the petitioner to establish, by clear and convincing evidence, that the court's factual determination is erroneous.  28 U.S.C. § 2254(e)(1). Section 2254(e), applies by

its terms, "to factual determinations made by state courts, whether the court be a trial court or an appellate court." *Sumner,* 449 U.S. at 547.

In this case, with regard to the Petition, the court is in possession of the complete state record, including the motions, hearings and trial transcripts, and briefs filed in connection with Petitioner's direct appeal to the Appellate Division. Petitioner has not requested that the court conduct an evidentiary hearing prior to resolving his claims as alleged in the Petition, and does not otherwise challenge the record as inaccurate. Accordingly, the court finds an evidentiary hearing unnecessary.

**3.    Merits of Petitioner's Claims**

**A.    First Ground**

Petitioner's First Ground challenges the unsworn testimony of the four-year old victim is insufficient to provide the corroboration required under New York Criminal Procedure Law ("N.Y. Crim. Proc. Law") §§ 60.20[3] and 60.50 ("§ 60.20__" and "§ 60.50"), of Petitioner's confession, which was both coerced and recanted. Petition, Ground One. In opposition, Respondent argues violations of state law do not arise under the "laws, treaties or Constitution of the United States" and, as such, are not subject to federal habeas review. Respondent's Memorandum at 12-15. There is no merit to this claim.

According to Petitioner, because D.M.'s testimony was unsworn, such unsworn testimony not only required corroboration, but also was insufficient to corroborate Petitioner's Confession admitting to abusing D.M. Petition, First Ground. Insofar as Petitioner's First Ground is predicated on the unsworn testimony of D.M. who was four years old when he testified at the trial, pursuant to § 60.20[3], "[a] defendant may not be

convicted of an offense solely upon evidence given pursuant to § 60.20[2] which, as

relevant here, provides

> A witness less than nine years old may not testify under oath unless the court is
> satisfied that he or she understands the nature of an oath.  If . . . a witness is
> deemed to be ineligible to testify under oath, the witness may nevertheless be
> permitted to give unsworn evidence if the court is satisfied that the witness
> possesses sufficient intelligence and capacity to justify the reception thereof. A
> witness understands the nature of an oath if he or she appreciates the difference
> between truth and falsehood, the necessity for telling the truth, and the fact that a
> witness who testifies falsely may be punished.

N.Y. Crim. Proc. Law § 60.20[2] (McKinney 2003).

With regard to Petitioner's Confession, on which the First Ground also relies, "[a] person

may not be convicted of any offense solely upon evidence of a confession or admission

made by him without additional proof that the offense charged has been committed."

N.Y. Crim. Proc. Law § 60.50 (McKinney 1970).

Petitioner's claim that neither D.M.'s "unsworn evidence," § 60.20[2], nor

Petitioner's confession was corroborated is not reviewable here, for it arises solely

under state law rather than the laws, treaties or Constitution of the United States, as is

required for habeas jurisdiction. *See generally*, 28 U.S.C. § 2254; *Lewis v. Jeffers*, 497

U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law.").

Significantly, violations of § 60.20[2] and [3] have been found not subject to habeas

review because they are merely errors of state law for which habeas review is not

available.  *See Rodriguez v. Greiner*, 274 F. Supp. 2d 264, 267 (E.D.N.Y. 2003)

("Whether the properly admitted unsworn testimony of the victim was sufficiently

corroborated in accordance with the requirements of New York C.P.L. 60.20(3) is a

matter left to the state courts.").  Similarly, Petitioner's claim that Petitioner's

Confession, even if uncorroborated and thus a violation of § 60.50, is not a viable

ground for habeas relief.  *See Kirkby v. Filion*, 644 F.Supp.2d 299, 306 (W.D.N.Y. 2009)

(holding "New York's confession corroboration rule [*i.e.*, § 60.50] is a state law

requirement which embodies no federal constitutional principle" (citing *Robinson v.*

*Smith,* 530 F.Supp. 1386, 1390–91 (S.D.N.Y.1982)).

Moreover, even if Petitioner's First Ground was reviewable under either §

60.20[3] or § 60.50, both D.M.'s unsworn statements, admissible as evidence at trial,

and Petitioner's Confession were corroborated by the sworn trial testimony of Alex

Grant to whom D.M. initially reported he was sexually abused by Petitioner, Trial Tr. at

228-29, as well as the trial testimony of Det. Ahmed and Dr. Caravan.  That D.M. was

available to be, and in fact was, cross-examined by Petitioner obviates any potential

argument that the Sixth Amendment Confrontation Clause was violated by corroborating

testimony by Alex, to which Petitioner failed to object and thus did not preserve for

habeas review,[12] and by Dr. Caravan to which Petitioner did object, Trial Tr. at 153, but

which was permitted pursuant to the business records exception to the hearsay rule*.*

Trial Tr. at 166-68.  *See Davis v. Washington*, 547 U.S. 813, 823-24 (2006) (the Sixth

Amendment Confrontation Claims applies only to testimonial hearsay).  *See also*

*Brewer v. Eckert*, 2020 WL 10061923, at * 17 (W.D.N.Y. Sept. 10, 2020) (holding

---

[12] A party's "failure to make objections at trial constitutes adequate procedural default under [New York Criminal Procedure Law] section 470.05[2]," *Garcia v. Lewis,* 188 F.3d 71, 79 (2d Cir.1999) (citing *Fernandez v. Leonardo,* 931 F.2d 214, 216 (2d Cir.1991)), and such default constitutes an "adequate bar to federal habeas review."  *Id.* (citing *Bossett v. Walker,* 41 F.3d 825, 829 n. 2 (2d Cir.1994)).  A finding of procedural default precludes federal habeas review of the federal claim, unless the habeas petitioner can show "cause" for the default and "prejudice" attributable thereto, *Murray v. Carrier,* 477 U.S. 478, 485 (1986), or demonstrate that the failure to consider the federal claim on habeas review will result in a "fundamental miscarriage of justice . . . .'"  *Id.* at 495 (quoting *Engle v. Isaac,* 456 U.S. 107, 135 (1982)).  To excuse a procedural default, "cause" must be something external to the petitioner, something that cannot fairly be attributed to him.  *Id.*  In the instant case, Petitioner has not argued anything external to him caused him to fail to object to Alex's testimony as required to demonstrate cause for the default.  Petitioner also cannot demonstrate the procedurally defaulted claim caused a fundamental miscarriage of justice because, as discussed, *supra,* Alex's testimony did not violate the Sixth Amendment Confrontation Clause.

habeas corpus petitioner could not demonstrate the admission of child's mother's hearsay testimony concerning the alleged child sexual abuse under the prompt outcry exception violated his Sixth Amendment right to confrontation where the child testified and was cross-examined (citing *Cusumano v. McFarland*, 2006 WL 1455785, at * 4 (D.N.J. May 18, 2006))).

Accordingly, Petitioner's First Ground does not present a viable basis for federal habeas relief and should be DISMISSED.

### B.   Second Ground

In his Second Ground, Petitioner claims the prosecution's expert testimony by LCSW Perkowski about Child Sexual Abuse Accommodation Syndrome ("CSAAS") was impermissibly introduced into evidence thus depriving Petitioner of due process. Petition, Ground Two.  In opposition, Respondent argues that the admission into evidence of LCSW Perkowski's testimony about CSAAS was a state evidentiary ruling posing no constitutional issue.  Respondent's Memorandum at 16-19.  This ground for habeas relief is without merit.

The so-called CSAAS about which LCSW Perkowski testified was created by one Robert Summit ("Summit") to assist medical doctors in recognizing sexual abuse in young victims, but is not intended as a diagnostic tool, nor to determine whether sexual abuse occurred.  Trial Tr. at 243, 287, 306.  On direct appeal, Petitioner argued CSAAS has been discredited such that the trial court erred in denying Petitioner's motion to preclude LCSW Perkowski from testifying about CSAAS, but the Appellate Division held that expert testimony regarding CSAAS "has long been admissible to explain behavior of a victim that might be puzzling to a jury," *Meir*, 112 N.Y.S.3d at 646, and that at

Petitioner's trial, LCSW Perkowski's "expert testimony was properly admitted to assist the jury in understanding the victim's response to the sexual abuse and in assessing the victim's credibility," *id*., such that "the expert did not exceed the bounds of what is permissible . . . . *Id*.

"'[H]abeas corpus relief does not lie for errors of state law,' and that necessarily includes erroneous evidentiary rulings." *Scrimo v. Lee*, 935 F.3d 103, 114 (2d Cir. 2019) (quoting *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))). "Therefore, unless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings, the claims are not properly reviewable in this context." *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 Fed.Appx. 69, 73 (2d Cir. 2011) (citing *DiGuglielmo v. Smith,* 366 F.3d 130, 137 (2d Cir.2004) (citing *Estelle v. McGuire,* 502 U.S. 62, 67–68, (1991))).

In the instant case, the prosecution elicited from LCSW Perkowski that CSAAS is not a diagnostic tool and cannot be used to determine whether or not someone, especially a child, has been sexually abused, but is intended to debunk misconceptions the public may have about how a sexually abused child might behave. Trial Tr. at 276-305. Significantly, none of LCSW Perkowski's testimony specifically concerned D.M. or D.M.'s behavior after the reported sexual abuse, and defense counsel cross-examined LCSW Perkowski regarding professional articles and practitioners critical of CSAAS so as to discredit CSAAS. Trial Tr. at 306-24. Accordingly, even if improperly admitted, LCSW Perkowski's testimony regarding CSAAS, along with defense counsel's cross-examination, did not affect the trial's "fundamental fairness" such that habeas review is

not available for this claim.  *McKinnon*, 422 Fed.Appx. at 73.  *See also Ocasio v. Noeth*,

2022 WL 4007633, at * 8 (W.D.N.Y. Sept. 2, 2022) (dismissing habeas petition where

petitioner argued, *inter alia*, ineffective assistance of trial counsel based on trial

counsel's failure to cross-examine LCSW Perkowski regarding CSAAS because

Perkowski conceded CSAAS was not a diagnostic tool and, thus, could not be used to

determine whether or not someone had been abused).

> Petitioner's Second Ground should thus be DISMISSED.

### C.    Third Ground

> Petitioner's Third Ground states, in its entirety, "Appellants [*sic*] sentence harsh

and excessive."  Petition, Ground Three.  Respondent argues the Third Ground

challenging the sentence on incarceration imposed for his conviction, specifically, 25

years to life on each count, as excessively harsh is not cognizable on habeas review.

Respondent's Memorandum at 20.  Although Petitioner does not specify the

constitutional basis for his Third Ground, the court observes that the Eighth Amendment

prohibits cruel and unusual punishments, U.S. CONST. Amend. VIII, and in his direct

appeal, Petitioner asserted the sentence violated his Fifth Amendment right against self-

incrimination insofar as Petitioner's minimum sentence was enhanced from 15 years to

25 years because Petitioner, who intended to appeal his conviction, refused at

sentencing to admit guilt and express remorse, which would have allowed the court to

impose a shorter sentence with treatment.  Petitioner's Appellate Court Memorandum[13]

---

[13] References to "Petitioner's Appellate Court Memorandum" are to the memorandum of law Petitioner filed July 1, 2019, in New York Supreme Court, Appellate Division, 4th Department, in support of Petitioner's direct appeal of his conviction, and manually filed with the State Court Record.

at 30-32.  Accordingly, the court construes Petitioner's Third Ground as asserting a

violation of both the Eighth and Fifth Amendments.

The Eighth Amendment forbids only *extreme* sentences which are "grossly

disproportionate" to the crime of conviction.  *Lockyer v. Andrade,* 538 U.S. 63, 72–73

(2003).  The Second Circuit has consistently held in habeas cases that "[n]o federal

constitutional issue is presented where ... the sentence is within the range prescribed by

state law."  *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992).  In the instant case,

both of the counts on which Petitioner was convicted, *i.e.*, predatory sexual assault and

predatory sexual assault against a child, are class A-II felonies.  N.Y. Penal Law §§

130.95 and 130.96.  As relevant here, New York Penal Law provides that for a sentence

of imprisonment "for the class A-II felony of predatory sexual assault as defined in

section 130.95 . . . or the class A-II felony of predatory sexual assault against a child as

defined in section 130.96 . . . such minimum period [of incarceration] shall be not less

than ten years nor more than twenty-five years."  N.Y. Penal Law § 70.00[3][a][ii].

Further, "where the defendant stands convicted of such sexual assault against a child

and such conviction is for a class A-II . . . felony offense, and the predicate conviction

for such sexual assault against a child is for a class A-II, class B or class C felony

offense, the court shall impose an indeterminate sentence of imprisonment, the

maximum term of which shall be life and the minimum period of which shall be at least

fifteen years and no more than twenty-five years."  N.Y. Penal Law § 70.07[4][a].

Accordingly, Petitioner's sentence is "within the range prescribed by state law," *White*,

969 F.2d at 1383, and Petitioner does not contend otherwise.  Petitioner's sentence

thus does not violate the Eighth Amendment and the Third Ground fails insofar as it is premised on an Eighth Amendment violation.

Alternatively, insofar as Petitioner asserts his Third Ground pursuant to the Fifth Amendment as was argued on direct appeal, Petitioner's Appellate Court Memorandum at 30-32, the Fifth Amendment protects an individual from being "compelled in any criminal case to be a witness against himself." U.S. CONST. Amend. V. Such privilege extends through a criminal defendant's sentencing hearing. *Mitchell v. United States*, 526 U.S. 314, 326 (1999) (a sentencing court's efforts to compel a defendant to "testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment."). The question for the court, therefore, is whether Petitioner was compelled to speak at sentencing so as to avoid a harsher sentence, which would violate the Fifth Amendment, or whether the Petitioner volunteered to speak to garner a more lenient sentence, here, a minimum of 15 years instead of 25 years. A review of the sentencing transcript, Sentencing Tr.,[14] *passim*, however, fails to show Petitioner was compelled to speak at the sentencing and that by failing to do so received a more harsh sentence.

Specifically, at the sentencing, Justice Buscaglia reviewed statements Petitioner made to the Probation Department[15] as well as to Officer Ahmed that Petitioner did not believe he needed any sex offender treatment, that counseling of that nature had not worked in the past, and that although Petitioner had "difficulty controlling [his sexual] urges around children," Petitioner did not believe he had any problem amenable to

---

[14] References to the "Sentencing Tr." are to the transcript of Petitioner's sentencing on the conviction, submitted as part of the State Court Record.

[15] It is not clear from the record to whom in the Probation Department Petitioner made such statements.

treatment.  Sentencing Tr. at 14.  Although the nature of these statements portray Petitioner in an unfavorable manner, contrary to Petitioner's assertion in the instant proceeding, none of these statements, which Petitioner does not dispute making, is reflective of Petitioner's guilt of the crimes for which he was being sentenced. Accordingly, Petitioner, by deciding to withdraw or recant any of the statements in the hope of garnering a lighter sentence, would not have been compelled to be a witness against himself.  Construing the Third Ground pursuant to the Fifth Amendment is therefore also without merit.

The Third Ground, whether construed as asserting a violation of the Eighth Amendment or Fifth Amendment, should be DISMISSED.

### D.    Fourth Ground

For his Fourth Ground asserted for habeas relief, Petitioner argues the trial court falsely informed the jury that the victim, D.M., identified Petitioner as the perpetrator of the crimes.  Petition, Ground Four.  In opposition, Respondent argues that this issue was presented on appeal in the context of challenging the sufficiency of the evidence and Petitioner's challenge to the veracity of the court's statement on the record that D.M. had identified Petitioner as the perpetrator of the sexual assault is not preserved for review and is now procedurally defaulted.  Respondent's Memorandum at 21-23. Alternatively, Respondent maintains there is no merit to Petitioner's legal insufficiency claim.  Id. at 23-24.

Preliminarily, the court observe that defense counsel not object at trial to Justice Buscaglia's noting for the record that D.M. identified Petitioner as the perpetrator of the sexual abuse of D.M., such that this argument has not been preserved for habeas

review.  Significantly, a review of Petitioner's direct appeal establishes his only challenge to Justice Buscaglia's remarks on the record that D.M. had identified Petitioner as the perpetrator was that the identification evidence was legally insufficient to support his conviction.  Petitioner's Appellate Court Memorandum at 20-22.

Petitioner, by failing to object at trial to Judge Buscaglia's remarks noting D.M.'s identification of Petitioner, procedurally defaulted on this claim under N.Y. Crim. Proc. Law § 470.05[2] which constitutes an "adequate bar to federal habeas review."  *Garcia,* 188 F.3d at 79.  Relevantly, Petitioner has not argued anything external to him caused him to fail to object to Justice Buscaglia's noting for the record that D.M. identified Petitioner as the defendant and, thus, Petitioner cannot establish cause for the default. Nor can Petitioner demonstrate the court's failure to consider his procedurally defaulted claim would result in a fundamental miscarriage of justice, nor could he given Petitioner's identification was never an issue at trial as well as that two other witnesses identified Petitioner as the defendant including Det. Ahmed, Trial Tr. at 55, and Alex.  *Id*. at 226.

Alternatively, insofar as this claim was presented on direct appeal as a challenge to the sufficiency of the evidence, "[t]he standard for assessing the sufficiency of the evidence to support a guilty verdict is well settled, and it is the same under both Federal and New York state law: The reviewing court is limited to asking whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Klosin v. Conway*, 501 F. Supp. 2d 429, 440 (W.D.N.Y. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (italics in original)).  In making this evaluation, "this [c]ourt must

defer to the jury's assessment of credibility."  *Cruz v. Giambruno*, 2009 WL 2928956, *4

(W.D.N.Y. 2009).  Further, a habeas petitioner "bears a very heavy burden in convincing

a federal *habeas* court to grant a petition on the grounds of insufficiency of the

evidence."  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (italics in

original).

In considering the sufficiency of the evidence supporting a state conviction,

generally, "[a] federal court must look to state law to determine the elements of the

crime."  *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999) (footnote omitted).  In

the instant case, however, Petitioner's challenge to the sufficiency of the evidence does

not involve the elements of the crimes for which he was convicted but, rather, only

Justice Buscaglia's noting on the record that D.M. had identified Petitioner as the

perpetrator of the crimes of which Petitioner stands convicted.  Petition, Fourth Ground.

Even without such identification by D.M., however, there was sufficient evidence for the

jury to find Petitioner was the perpetrator including the in-court identifications made by

Det. Ahmed to whom Petitioner had confessed the crimes, Trial Tr. at 55, and Alex, to

whom D.M. first reported the crime, Trial Tr. at 226, as well as Dr. Caravan's testimony

that D.M. reported that "Erick" did "bad stuff" to him with his mouth.  Trial Tr. at 184,

196.  Moreover, the prosecution elicited from both Alex and Petitioner that Petitioner's

physical appearance at his arrest in January 2016 when Petitioner's hair was longer and

he then had facial hair, Trial Tr. at 226 (Alex), 390 (Petitioner), an undisputed fact to

which a reasonable jury could attribute D.M.'s initial difficulty in identifying Petitioner in

court.

Thus, Ground Four provides no basis for habeas review whether construed as alleging Justice Buscaglia falsely noted on the record that D.M. identified Petitioner as the perpetrator of the crimes, an issue which was not preserved for habeas review, or construed as challenging the sufficiency of the evidence.  Ground Four should be DISMISSED.

Furthermore, as the court finds there is no substantial question presented for appellate review, a certificate of appealability should not issue. 28 U.S.C. § 2253, as amended by the AEDPA.

## <u>CONCLUSION</u>

Based on the foregoing, the Petition should be DISMISSED.  The Clerk of Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    March 13, 2023
              Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.  Pursuant to Fed.R.Civ.P. 72(a), Petitioner shall have fourteen (14) days from service of this Decision and Order to file written objections with the District Judge.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,*  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Petitioner and the Respondent.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       March 13, 2023
             Buffalo, New York